NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WSOU INVESTMENTS LLC, DBA BRAZOS LICENSING AND DEVELOPMENT,**
*Plaintiff-Appellant*

**v.**

**F5, INC., FKA F5 NETWORKS, INC.,**
*Defendant-Appellee*

---

2023-1427, 2025-1505

---

Appeals from the United States District Court for the Western District of Washington in No. 2:21-cv-00126-BJR, Senior Judge Barbara Jacobs Rothstein.

---

Decided:  April 17, 2025

---

ARI B. RAFILSON, Cherry Johnson Siegmund James, PLLC, Waco, TX, argued for plaintiff-appellant.  Also represented by MARK SIEGMUND.

JONATHAN WEINBERG, King & Spalding LLP, Washington, DC, argued for defendant-appellee.  Also represented by RYAN A. SCHMID; DAVID SHANE BRUN, Palo Alto, CA; ANGELA CAMPBELL TARASI, Denver, CO; BRENT P. RAY, Arnold & Porter Kaye Scholer LLP, Chicago, IL.

———————————

Before TARANTO and HUGHES, *Circuit Judges,* and
BARNETT, *Judge.*[1]

TARANTO, *Circuit Judge.*

WSOU Investments LLC, dba Brazos Licensing and
Development—hereafter Brazos—owns U.S. Patent
No. 7,548,945, which claims systems and methods for distributing certain network traffic across multiple devices.
Brazos sued F5, Inc., fka F5 Networks, Inc., alleging infringement of the patent. Claim-construction proceedings
produced a claim-construction order that adopted a construction of the "master device" claim limitation in accordance with Brazos's own arguments. F5 then moved for
summary judgment of noninfringement, and the district
court granted the motion, determining that no reasonable
jury could find that F5 practiced the "master device" limitation as construed in the claim-construction order. *WSOU
Investments, LLC v. F5 Networks, Inc.*, No. 2:20-cv-01878-
BJR, 2022 WL 17601874 (W.D. Wash. Dec. 13, 2022) (*Summary Judgment*); J.A. 51–63; J.A. 64.

Brazos appeals, challenging only the district court's interpretation of the "master device" limitation. We hold
that Brazos's claim-construction argument on appeal is forfeited, and we see no good reason to excuse the forfeiture.
Brazos does not contend that summary judgment was improper under the district court's construction. Accordingly,
we affirm.

———————————

[1]    Honorable Mark A. Barnett, Chief Judge, United
States Court of International Trade, sitting by designation.

I

A

The '945 patent is titled "System, Network Device, Method, and Computer Program Product for Active Load Balancing Using Clustered Nodes as Authoritative Domain Name Servers." The patent discusses a common situation: An Internet user wishes to connect to an information source (a "host") that has a user-friendly domain name (*e.g.*, "www.xyz-news.com"). The user transmits the domain name, and a domain name service (DNS), using a "name server," translates the domain name into a numerical internet protocol (IP) address for a host device and sends the IP address to the user's own device for that device to use to communicate directly with the identified host device. A popular host may have multiple devices (servers), each having its own IP address, to handle the access requests. In that circumstance, when a user sends a domain name to the name server, the name server communicates with the host's "authoritative name server (ANS)," which selects a particular one among the host's devices and sends the IP address for that device to the user's device to enable it to communicate directly with the selected host device. '945 patent, col. 1, line 28, through col. 2, line 2.

The patent concerns the ANS's selection among available host devices. The patent notes that one "known technique" is "DNS round-robin," which involves cycling through a "predefined, static list of the IP addresses of the multiple devices" of the host as queries are received. *Id.*, col. 2, lines 11–15. But that technique, the patent says, has "several shortcomings": For instance, the ANS may select an unavailable host device, causing a connection error for the user, or a certain host device may become overloaded if users happen to remain connected to it for a longer period. *Id.*, col. 2, lines 28–52.

The '945 patent proposes what it describes as an improvement by providing "a means by which a cluster of

devices shares a domain name and functions as the authoritative name server for the domain." *Id.*, col. 2, lines 60–64.  Each "device or node" in the cluster "repeatedly announce[s] status information, such as [its] existence on the network, current load percentage, number of active connections, and IP address." *Id.*, col. 2, line 64, through col. 3, line 3; *see also id.*, col. 3, lines 22–24.  "One of the network devices may be designated as a master device, wherein the master device is assigned an IP address as the authoritative domain name server." *Id.*, col. 3, lines 20–22.  The master device may be capable of receiving a user request, selecting a device to communicate with the client "based on the status information," and returning the IP address of that device to the client. *Id.*, col. 3, lines 24–30.  And, the specification states, "[t]he designation of master device may be transferred as necessary from one device to another device." *Id.*, col. 7, lines 37–38.

Representative claims 1, 6, and 12 state as follows, with the phrase in dispute here highlighted:

1. A system comprising:

a plurality of network devices grouped in a cluster, wherein each network device has a different respective device internet protocol (IP) address; wherein one of the network devices is designated as ***a master device***;

wherein ***the master device*** is assigned an IP address corresponding to an IP address of an authoritative domain name server; wherein each network device is configured to communicate status information to at least ***the master device*** in the cluster;

wherein ***the master device*** is configured to receive a domain name service (DNS) query based upon a client request, select one of the network devices to communicate with the client based on the status

information of each of the network devices, and return a device IP address of the selected one of the network devices in response to the DNS query.

. . .

6. An apparatus comprising:

a processor configured to receive status information from each of a plurality of network devices grouped in a cluster; the processor further configured to receive a domain name service (DNS) query based upon a client request; select one network device from among the cluster of the network devices including the network device itself to communicate with a client based on the status information of each of the network devices, and return a device internet protocol (IP) address of the selected one of the network devices in response to the DNS query,

wherein the network device is designated as *a master device* and is assigned an IP address corresponding to an IP address of an authoritative domain name server.

. . .

12. A method comprising:

designating one network device, among a plurality of network devices grouped in a cluster, as *a master device*, wherein *the master device* is assigned an internet protocol (IP) address corresponding to an IP address of an authoritative domain name server;

communicating status information from each network device to at least *the master device* in the cluster;

receiving a domain name service (DNS) query based upon a client request;

> selecting one of the network devices to communicate with the client, based on the status information of each of the network devices; and

> returning a device IP address of the selected one of the network devices in response to the DNS query.

*Id.*, col. 8, line 63, through col. 10, line 15 (emphases added).

## B

In January 2021, Brazos sued F5 in the district court for the Western District of Washington, alleging infringement of the '945 patent. J.A. 95–100. F5 filed an answer in February 2021, denying the infringement allegations and asserting affirmative defenses and counterclaims (including of invalidity).

In the following months, the parties prepared for a claim-construction hearing set for December 2021. J.A. 18719–20 (Dkt. 36); J.A. 9782–970. In its opening claim-construction brief, Brazos argued that no express construction of "a master device" was necessary and that a relevant artisan would understand its ordinary meaning to be "a device in a cluster that is configured to select other device(s) at a given time." J.A. 370. Brazos contended that "the patent does not require 'a *single* network device,' as F5 proposes," because "the patent contemplates that *any device* can serve as the master." J.A. 371 (second emphasis added); *see also id.* (quoting '945 patent, col. 4, lines 52–53) ("Any node in the cluster is generally capable of functioning as the master node."). In contrast, F5 proposed: "[a] single network device controlling the other devices in the same cluster." J.A. 18653. F5 argued that "the claim language and specification reflect that only one device at a time is the master." J.A. 18653. In the responsive brief, Brazos reiterated that "a master device" was not limited to "a single network device" because "[t]he patent contemplates

that a 'master device' can be any device and can change." J.A. 834.

On January 28, 2022, after the hearing, the district court issued a claim-construction order. *WSOU Investments, LLC v. F5 Networks, Inc.*, No. 2:20-cv-01878-BJR, 2022 WL 268825 (W.D. Wash. Jan. 28, 2022) (*Claim Construction*); J.A. 1–18. It discussed the disputed issues about the meaning of the "master device" phrase, including the issue relevant now on appeal: "whether [a master device] should be defined as a 'single device' or simply 'a device.'" *Id.* at *7. The district court "agree[d] with [Brazos's] definition," stating: "While [F5] is correct that the patented technology contemplates there being only one master device in a cluster at a given time, *any device in the cluster can serve as the master device*, and the device playing the master role may change as needed." *Id.* (emphasis added). The court thus adopted Brazos's "a device" construction precisely to avoid the inflexibility of F5's "a single device" construction. The court observed that "[t]his flexibility and interchangeability is among the patented technology's intended improvements upon the prior art, in which only one device, separate from the others in the cluster, served as the ANS." *Id.* The district court wrote that F5's "proposed use of 'a single network device' seems more aptly to describe the prior art than the patented technology." *Id.*

In June 2022, after the parties had completed the crucial discovery, F5 moved for summary judgment of noninfringement and invalidity. J.A. 7665–701. F5 contended that, under the district court's claim-construction order, "the '945 patent requires . . . that *any* cluster device can be designated as the master device," yet there was no evidence that any more than one device in F5's product could be designated as a master device. J.A. 7676–79 (capitalization omitted); *see also* J.A. 13420–27. Brazos argued in opposition that "neither the Court's construction nor the patent require[s] . . . *each* device in the cluster to be interchangeable, even though the claims do permit *other* devices in the

cluster to be designated as master at a given time." J.A. 9011 (emphases added).

On December 13, 2022, the district court granted F5's motion for summary judgment. *See generally Summary Judgment.* It first noted that "[t]he parties' primary dispute on summary judgment concerns whether the [']945 patent necessarily requires that *any* device in a cluster of devices can serve as the master device at any given time, and thus that a product can only infringe the patent if it possesses this capability." *Id.* at *3. Referring "to this capability as 'interchangeability,'" *id.* at *3 n.3, the district court then summarized the parties' positions: F5 was arguing that "interchangeability is a necessary component," while Brazos was arguing that interchangeability was "'permissible' but not required." *Id.* at *3. The district court concluded that Brazos's interpretation "defies the plain language of the [claim-construction] order," under which "[F5's] product cannot infringe the patent unless it features a system in which *any device in a cluster* can function as the master device at any given time." *Id.* at *3–4 (emphasis added). The district court then held that there was no genuine factual dispute as to noninfringement, so F5 was entitled to summary judgment. *Id.* at *4–6. Without addressing F5's invalidity counterclaims, the court dismissed the "matter" with prejudice. J.A. 64.

Brazos timely appealed. Upon this court's sua sponte order inquiring into the existence of a final judgment, the parties jointly moved the district court to dismiss F5's counterclaims without prejudice. ECF Nos. 64, 66. We dismissed the appeal and issued the mandate to the district court. ECF Nos. 67–68. The district court dismissed the counterclaims without prejudice on March 3, 2025, after which Brazos filed a new notice of appeal and this court recalled the mandate and proceeded to oral argument on the already-filed briefs. ECF Nos. 69–70. We now have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

"We review a district court's grant of summary judgment under the standard applied in the regional circuit"—here, the Ninth Circuit. *Genuine Enabling Technology LLC v. Nintendo Co.*, 29 F.4th 1365, 1372 (Fed. Cir. 2022). The Ninth Circuit reviews a grant of summary judgment without deference. *Id.*; *see, e.g., Terpin v. AT & T Mobility LLC*, 118 F.4th 1102, 1110 (9th Cir. 2024). We review a district court's claim construction without deference and any underlying factual determinations for clear error. *Genuine*, 29 F.4th at 1372. Forfeiture (often called "waiver") of claim-construction positions is a matter of Federal Circuit law, not regional-circuit law. *See Lazare Kaplan International, Inc. v. Photoscribe Technologies, Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1250–51 (Fed. Cir. 2005). "To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

Brazos's appeal depends on its argument that the district court erred in its claim construction. Brazos Opening Br. at 1–2, 22–45. And Brazos's claim-construction challenge on appeal depends on its position that, under the correct claim construction of the "master device" phrase, once a cluster device has been selected as the master device, not even a single one of the other cluster devices need be available to be switched in to play the master role. *See id.* at 39–44; Oral Arg. at 34:52–35:17, available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1427_03052025.mp3. We cannot understand Brazos's position on appeal any other way. It does not say that the correct construction is that some but not all cluster devices must be available to switch into the master role. It also offers no argument that it could avoid summary judgment

under such a construction.  Nor does it say that we should reject the district court's construction and remand for further proceedings to determine what the correct construction is.

The claim construction proposed by Brazos on appeal, however, is not one that it presented to the district court. We have long applied a very strong rule forbidding an appellant to urge a construction on appeal that asserts a different claim scope from what it urged in the tribunal being reviewed.  *See Wash World Inc. v. Belanger Inc.*, 131 F.4th 1360, 1368–69 (Fed. Cir. 2025); *Digital-Vending Services International, LLC v. University of Phoenix, Inc.*, 672 F.3d 1270, 1273 (Fed. Cir. 2012); *Conoco, Inc. v. Energy & Environmental International, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370 (Fed. Cir. 2002); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001). Such a new position is generally forfeited.  *See Wash World*, 131 F.4th at 1369; *In re Google Technology Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020); *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1369 (Fed. Cir. 2022).

Here, Brazos did not ask the district court to construe the disputed claim phrase to cover a master device that is not capable of having its master-device functions switched over to even one other cluster device.  *See* J.A. 348–49, 370–73 (opening claim-construction brief); J.A. 822–24, 33–35 (responsive claim-construction brief); J.A. 9000–33 (opposition to motion for summary judgment).  And this is an especially strong case for finding forfeiture because of what Brazos did say to the district court, not just what it failed to say.  The district court properly understood Brazos to have argued the opposite of what it now asserts—that at least one, indeed every, other device in the cluster must be capable of becoming the master device.  In its claim-construction brief, Brazos argued that "the patent contemplates that *any* device can serve as the master."  J.A. 371 (emphasis added); *see also id.* (quoting '945 patent, col. 4,

lines 52–53) ("Any node in the cluster is generally capable of functioning as the master node."). The district court clearly accepted that understanding of needed flexibility, writing it into the claim-construction order as the explanation for adopting the "a device" position at Brazos's urging in preference to the unchangeability meaning of F5's "a *single* device" position. *See Claim Construction*, at *7 ("The Court agrees with [Brazos's] definition . . . . While [F5] is correct that the patented technology contemplates there being only one master device in a cluster at a given time, *any device in the cluster can serve as the master device*, and the device playing the master role may change as needed." (emphasis added)).

After the claim-construction order, when F5 moved for summary judgment, Brazos did not purport to ask for a new claim construction, let alone the one it now is pressing. Brazos discounted the district court's express explanation in the claim-construction order of why it chose "a device" over "a single device" and argued that the only "actual construction" was "a device." J.A. 9011. And it argued that "the claims do permit *other* devices in the cluster to be designated as master at a given time," but that they "do not require that *each* device in a cluster is capable of being designated as the master device." J.A. 9011 (emphases added; capitalization omitted in second quote).

We see no sound reason to excuse Brazos's forfeiture of its current position. The principle requiring timely and consistent presentation of fundamental claim-construction positions that shape the litigation is an important one for conservation of courts' and litigants' resources. And Brazos has not shown any manifest injustice or other "exceptional circumstances." *See Wash World*, 131 F.4th at 1369 ("We may excuse forfeiture under exceptional circumstances."); *Google*, 980 F.3d at 863. Brazos affirmatively led the district court to the position it now disowns. That position fairly informs what "a device" means, given its contrast with "a single device" (with its unchangeability meaning).

And the specification provides support, stating: "The designation of master device may be transferred as necessary from one device to another device." '945 patent, col. 7, lines 37–38.  On appeal, not only has Brazos failed to challenge the district court's determination that noninfringement is clear under a construction where *every* cluster member could function as the master device.  Brazos Opening Br. 22–45; *Summary Judgment*, at *4–6.  It also has not concretely identified how the summary judgment question could be answered differently under a claim construction where *at least one* cluster member could replace the master device.  *See* Oral Arg. at 33:26–35:23.  We therefore will follow the usual course and hold Brazos to its forfeiture.

### III

We have considered Brazos's remaining arguments and find them unpersuasive.  Accordingly, we affirm the decision of the district court.

**AFFIRMED**